CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
8/14/2026
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| CS CUSTOM STRUCTURES, INC., *Plaintiff*, v. MITCHELL VAUGHAN, ET AL., *Defendants.* | CASE NO. 6:26-CV-00046<br>MEMORANDUM OPINION & ORDER<br>JUDGE NORMAN K. MOON |

Plaintiff CS Custom Structures, Inc. ("Custom Structures"), provided architectural and construction services to defendants, Mitchell and Meghan Vaughan (the "Vaughans"). Dkt. 1 ¶¶ 10–15. During construction, the Vaughans fired Custom Structures and hired another contractor to finish their project. *Id.* ¶ 16. Since completing the project—which the parties refer to as "the Cottage"—the Vaughans have used the property as a micro-wedding business. *Id.* ¶ 17. As part of that business, the Vaughans post pictures of the Cottage on their website and related social media pages. *Id.* ¶¶ 18–19.

Custom Structures sued the Vaughans in state court for breaching the construction agreement and filed this federal lawsuit alleging copyright and Lanham Act violations. The Vaughans move to dismiss Custom Structures' copyright and Lanham Act claims, arguing: (1) they had an express license to build the Cottage using Custom Structures' plan; (2) they can post pictures of the Cottage online under the Copyright Act's "public space" exception, *see* 17 U.S.C. § 120(a); (3) they have an express or implied license to photograph and market the Cottage; (4) the Lanham Act does not apply when a claim sounds in copyright; and (5) the Lanham Act claim

nonetheless fails because no consumer would be confused about whether the Vaughans were marketing and selling architectural plans on their website about micro-weddings. Dkt. 13. Custom Structures opposes dismissal. Dkt. 16. For the following reasons, the Vaughans' motion to dismiss will be granted and Custom Structures' Complaint will be dismissed.

## I. Legal Standards

To resolve the Vaughans' 12(b)(6) motion, the Court applies the familiar *Twombly*/*Iqbal* standard. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, the Court accepts Plaintiff's factual allegations as true and draws all reasonable inferences in its favor. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 467 (4th Cir. 2012). So long as the complaint alleges "enough facts to state a claim to relief that is plausible on its face," the motion to dismiss must be denied. *Twombly*, 550 U.S. at 555. The Court may consider any materials—including contracts—that are incorporated into or attached to the complaint without converting the motion to dismiss into a motion for summary judgment. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 448 (4th Cir. 2011).

## II. Analysis

Custom Structures alleges two distinct harms: (1) the Vaughans misused Custom Structures' intellectual property when they used its architectural plans to complete construction of the Cottage, Dkt. 1 ¶ 16; and (2) the Vaughans misused Custom Structures' intellectual property by photographing and marketing the Cottage on the internet, *id.* ¶¶ 24–30. Neither are actionable.

To assert a copyright infringement claim, a plaintiff must first produce a valid copyright and then establish that the defendant, *without authorization*, copied the protected work. *See Nelson–Salabes, Inc. v. Morningside, Dev., LLC*, 284 F.3d 505, 513 (4th Cir. 2002). The Court

assumes that Custom Structures has a valid copyright for the Cottage's construction plans. However, Custom Structures has not established the Vaughans copied its intellectual property without authorization.

To the contrary, Custom Structures concedes the Vaughans commissioned the architectural plans for the Cottage, *id.* ¶¶ 10–13, and it attaches to its Complaint the express license that permitted the Vaughans to use the plans to construct their structure, Dkt. 1-1.[1] Specifically, the Vaughans agreed to pay Custom Structures $6,600 for construction documents including "floor plans, roof plan, building elevations, interior cabinetry elevations, opening schedule, section, finish schedule, and details." Dkt. 1-1. In exchange for the $6,600, Custom Structures allowed the Vaughans to use the construction documents "solely with respect to this project."[2] *Id.* It is clear from the face of the Complaint (and its incorporated exhibits) that the Vaughans had authorization to use the construction plans to build the cottage.[3] Absent allegations that the Vaughans breached the March 24, 2022 Agreement by failing to pay the $6,600, Custom Structures cannot seriously

---

1 Although the existence of a license is ordinarily an affirmative defense, such a defense can serve as the basis for dismissal if "the complaint 'indicate[s] the existence of an affirmative defense' and 'the defense clearly appears on the face of the complaint.'" *Lean Sols. Inst., Inc. v. Fed. Rsrv. Bank of Atlanta*, 2013 WL 12246986, at *2 (N.D. Ga. Feb. 26, 2013) (quoting *Quiller v. Barclays Am./Credit, Inc.*, 727 F.2d 1067, 1069 (11th Cir. 1984)). Here, the Complaint and attached exhibits clearly establish the Vaughans' license defense, which forecloses copyright liability.

2 The Agreement forbade the Vaughans from "resus[ing] or permit[ting] the resuse of the Designer's documents except by mutual agreement in writing. *Id.* However, the Complaint contains no allegations that the Vaughans reused the plans on another property or allowed a third party to use the plans.

3 Unlike in the *Johnson* case, there were no caveats in the Vaughans' Agreement that the license depended upon Custom Structures being hired and retained through project completion. *Johnson v. Jones*, 149 F.3d 494, 500–01 (6th Cir. 1998) (the evidence showed the architect intended that his copyright could only be used if he continued with the project through completion).

argue that the Vaughans violated Custom Structures' copyright by using the commissioned architectural plans to construct the Cottage. Accordingly, this claim must be dismissed.

Custom Structures' other arguments—that the Vaughans violated the Lanham Act and the Architectural Works Copyright Protection Act ("AWCPA") by posting pictures of the Cottage online—are slightly more complicated. Dkt. 1 ¶¶ 24–30. Taking the Lanham Act claim first, the Court agrees that Custom Structures, as the creator of the Cottage construction plans, is not protected by 15 U.S.C. § 1125.[4] Section 1125 only protects "the producer of the [] goods that are offered for sale, [] not [] the author of any idea . . . embodied in those goods." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). The author or creator is, instead, protected by copyright or patent law. *Id.* Therefore, absent allegations that Custom Structures

---

[4] Section 1125 provides:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

produced the construction plans and the Vaughans falsely marketed the plans as their own,[5] it is difficult to see how the Lanham Act applies at all.[6] *E.g.*, *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1181 (10th Cir. 2009).

But even if the Act does apply to this situation, Custom Structures has failed to plead the four elements of a reverse-passing-off claim: "(1) the work at issue originated with the plaintiff; (2) origin of the work was falsely designated by the defendant; (3) the false designation of origin was likely to cause consumer confusion; and (4) the plaintiff was harmed by the defendant's false designation of origin." *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 710 (4th Cir. 2016) (quoting *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 438 (4th Cir. 2010)). Although Custom Structures alleges that the Vaughans claimed to have done "all the design work," including choosing "the colors [and] textures," *see* Dkt. 1-6, no allegations support an inference that the Vaughans' statements would confuse a consumer. The Vaughans' run a micro-wedding business; they are not designers, architects, or builders and do not market themselves as such. There is a difference between a homeowner saying, "I picked out the colors," and a homeowner saying, "I'm the architect and I'll sell you these plans." Based on the Complaint's allegations, no one looking for the services of an architect would contact the Vaughans to purchase

---

[5] To be harmed under the Lanham Act, a plaintiff must "allege an injury to a *commercial* interest in reputation or sales." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 132, 134 S. Ct. 1377, 1390, 188 L. Ed. 2d 392 (2014); *see also Novo Nordisk A/S v. Amble Health, Inc.*, 2026 WL 776100, at *3 (N.D. Ohio Mar. 19, 2026); *Ball v. E. Franklin Superette & Kitchen LLC*, 2025 WL 2684001, at *5 (W.D.N.C. Sept. 19, 2025).

[6] The Lanham Act also has an interstate commerce requirement, and Custom Structures has not alleged that the construction plans for the Cottage were sold and used at all, much less outside of Virginia. *See PBM Products, LLC v. Mead Johnson & Co.*, 639 F.3d 111, 120 (4th Cir. 2011) (the Lanham Act creates a federal cause of action for unfair competition by prohibiting misrepresentation in interstate commerce); *see also CSM Invs., Inc. v. Everest Dev., Ltd.*, 840 F. Supp. 1304, 1313 (D. Minn. 1994) (no Lanham Act claim where architectural plans were only copied and used inside Minnesota);

the construction plans for the Cottage. This lack of commercial confusion dooms Custom Structures' Lanham Act claim.

That leaves Custom Structures' argument that the Vaughans violated its copyright by posting pictures of the Cottage on the Vaughans' website and social media accounts. To be sure, the AWCPA amended the Copyright Act to protect architectural works, *see* 17 U.S.C. § 102(a), which the statute defines as:

> [T]he design of a building as embodied in any tangible medium of expression, including a building, architectural plans, or drawings. The work includes the overall form as well as the arrangement and composition of spaces and elements in the design but does not include individual standard features.

*Id.*, § 101. Excluded from copyright protections are "pictures, painting, photographs, or other pictorial representations" of an architectural work that is "ordinarily visible from a public space." *Id.*, § 120(a). Section 120 further permits the owners of a building "embodying an architectural work" to alter or destroy the building without the copyright holder's permission. *Id.*, § 120(b).

The Vaughans assert two arguments for why this copyright claim should be dismissed: (1) 17 U.S.C. § 120(a)'s public space exception applies to any images taken of the Cottage, and (2) the Vaughans have an express or implied license to photograph and market their property. Dkt. 13. Based on the Court's preliminary research, little authority interprets the scope of § 120(a)'s public space exception. For example, it is unclear whether Congress even contemplated § 120(a) being used by a building's owners or whether its purpose is to allow the *public* to photograph or paint buildings that are publicly viewable. But even if the exception were to apply to owners, the Complaint has insufficient facts to support the exception's application at the motion to dismiss stage. Indeed, Custom Structures alleges that "the general public cannot view or access the Cottage" and that only "a select few may access or view it from time-to-time." Dkt. 1 ¶22.

The only remaining question then is whether the Vaughans had the right to photograph and market their property through either an express or implied license. The Court need not address the Vaughans' implied license argument because they were granted an express license to build and enjoy the Cottage.[7]

Although there is very little apposite precedent, the Court agrees with the Vaughans that "in constructing the Cottage and marketing it as a wedding venue, [the Vaughans] were within the scope of and entirely consistent with their express [] license." Dkt. 13 at 16. Reviewing the parties' contract, the Vaughans paid for a license to construct the Cottage and to use the Cottage as they saw fit. As discussed in the Fourth Circuit's *Nelson-Salabes* opinion and the Sixth Circuit's *Johnson* opinion, architects know how to limit the scope of the licenses they grant--indeed, the American Institute of Architects provides form contracts to its members that limit the use of copyrighted architectural works. *See Nelson-Salabes, Inc.*, 284 F.3d at 515; *Johnson*, 149 F.3d at 500–01. But the Agreement here contains no use limitations, which one would expect to find if the Vaughans could not photograph a structure they commissioned and constructed.

When Custom Structures granted the Vaughans an unrestricted license to build the Cottage on their Bedford property, that license naturally encompassed the right to freely enjoy the completed project, including photographing and marketing the structure. In fact, the Agreement recognizes that the express license granted the Vaughans' ownership of any images of their

---

[7] If the Court needed to consider the Vaughans' implied license argument, it would be inappropriate to do so at the motion to dismiss stage. An "implied license" for use of an otherwise copyright protected work is created "when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee copy and distribute his work." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 514 (4th Cir. 2002) (citation omitted). This is a factually intensive inquiry that does not naturally lend itself as a threshold defense.

completed project and carves out an exception allowing Custom Structures to "use photographs and narratives of the project in [its] marketing efforts to illustrate design and creative abilities." Dkt. 1-1 at 4. The last paragraph of the parties' Agreement—which gives Custom Structures permission to use photographs of the Cottage for its marketing efforts—would be superfluous if Custom Structures had retained ownership of all images of the completed project.

Because images of the completed Cottage are licensed to the Vaughans, Custom Structures' copyright claim arising from the Vaughans posting pictures of the Cottage online must be dismissed.

**III. Conclusion**

For the forgoing reasons, the Vaughans' motion to dismiss (Dkt. 12) is **GRANTED**. Custom Structures' claims are **DISMISSED**, and the Clerk is directed to strike this matter from the Court's active docket.

The Clerk shall provide a copy of this Order to all parties of record.

Entered this 14th day of August, 2026.

Norman K Moon

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE